(In the Court of Common Pleas—January Term, 1897.)

EUGENE EASTMAN, v. THE STATE OF OHIO.

_____

KOHLER, J.

*"Other Agency"* in Sec. 4403 Rev. Stat. construed.

The words "or other agency" in Sec. 4403 of the statute regulating the practice of medicine in Ohio, must be construed with the words "drugs and medicine" in the same section to make them sufficiently definite and certain to indicate what is and what is not a crime.

*Construction of statute—Rule.*

Where particular words are in a statute followed by general words, the general words are restricted in their meaning to objects of the like kind with those specified.

*Practice of Osteopathy.*

The practice of Osteopathy is not within the prohibition of the statute regulating te practice of medicine in Ohio.

_____

The petition in error in this case shows that the plaintiff, Eugene Eastman, was on the 27th of January, 1897, found guilty and sentenced to pay a fine for the violation of the act of the general assembly passed February 27, 1896, 92 Ohio Laws, p. 44.

The plaintiff in error was charged upon an affidavit, with the offense of practicing medicine without a certificate, contrary to the provisions of the above mentioned act.

The material parts of the affidavit are as follows: "That the said Eugene Eastamn, on or aobut the 20th day of December, 1896, did unlawfully then and there practice medicine, to-wit, did then and there unlawfully prescribe, direct and recommend for the use of one William Barnett, certain drugs and medicines, and other agencies, the kind unknown to affiant, for the treatment of a certain disease, to-wit, paralysis, for a certain fee, the exact amount of which is unknown to affiant."

Upon the appearance of the accused in the mayor's court upon this charge, it appears that the formal introduction of testimony was dispensed with, and the attorneys for the state and the attorneys for the accused mutually agreed upon a statement of facts to be held and taken in lieu of the testimony, and the plaintiff in error by his petition now seeks to revers this judgment of the mayor against him upon this testimony, or, in other words, upon this agreed statement of facts, on the ground that the judgment is contrary to law, and that his conviction by the mayor was illegal.

The transcript of the proceedings before the mayor appended to the petition in error, shows the proceedings in detail, and sets forth this agreed statement of facts; and the question is therefore presented to this court, whether this judgment of the lower court should be reversed on account of error in the judgment and proceedings below.

The question is in many respects a new one, and although the case has been carefully examined by counsel for the state and the accused, and very excellent briefs presented to the court, yet no case exactly parallel has been referred to.

And this raises the queston, did the mayor err in adjudging that the said Eugene Eastman was guilty of the charge set forth in the affidavit, upon which the said action, and proceeding as instituted?

A number of errors are specifically assigned, but they are all substantially to the same effect, namely, that the plaintiff in error was illegally convicted upon the charge set forth, and upon the evidence presented.

The agreed statement of facts is as follows:

"1. The accused Eugene Eastman is a graduate of the American School of Osteopathy of Kirksville, Missouri, regularly incorporated and chartered under the laws of said state, holding a diploma therefrom, and treats certain diseases in accordance with the Osteopathic system, using no drugs or medicines whatever, but relying solely upon the effects to be produced by manipulating the patient's body or members thereof with the naked hands.

2. Some time prior to December 20, 1896,

the said accused located in the city of Akron, Summit county, Ohio, now resides therein, and is there engaged in the treatment of certain diseases in accordance with the above system.

3. About December 5, 1896, the said William Barnett sent a request to the accused asking him to come to his house to examine and treat him for a certain ailment with which the said Barnett had for some time been afflicted.

4. The accused shortly thereafter called at the house of said Barnett and upon examination made became satisfied that said Barnett was afflicted with a certain physical ailment commonly known as paralysis. The left arm and left leg of said Barnett were the parts of his body which showed the most marked symptoms of paralysis and the accused from this examination believed that the chief source of this ailment was an atrophied condition of the brachial and sacral plexuses. Upon discovery of the said symptoms and conditions, the accused believed, in accordance with the said system of osteopathy, that a stimulation of the atrophied parts could be accomplished through manipulations of the patient's left arm and left leg and of the nerve trunks supplyng said members, and thereby the said patient could be at any rate improved and probably cured of his ailment of which the said patient was by the accused advised. Thereupon a bargain was made between the accused and said patient whereby said patient agreed to pay the accused twenty-five dollars for treatment of the kind and nature above mentioned, fifteen dollars of which, prior to the filing of the affidavit herein, had been paid to the accused.

5. On the 19th day of December, 1896, but not on the 20th day thereof, at the said county of Summit, the accused did treat said patient in accordance with the said osteopathic system and said treatment was as follows: Said patient was placed upon a couch, required to remove his coat and vest, and the accused then proceeded to rub, press and knead with his hands. that portion of the patient's back on each side of the spinal column from the vertebra prom inens to the base of the sacrum; after this manipulation had been finished, the accused placed the patient on his back, and did then and there with his hands for a time rotate both legs and left arm.

No drug or medicine was prescribed, directed or recommended by the accused for the use of said patient.

6. Said patient claims that his paralysis, since his treatment by the accused, is diminishing, and that his left arm and left leg are increasing in strength and freedom of movement.

7. The accused had not at the time above stated deposited a certificate from the State Board of Medical Examination and Registration for record with the Probate Judge of the county of Summit, certifying that said accused was entitled to practice medicine in the state of Ohio in which said accused resides; the treatment above set forth was not performed in a case of emergency; the accused was not a commissioned officer of the United States Army, Navy or Marine Service. The accused was not a dentist, or engaged in the practice of dentistry; he was not a physician or surgeon from another state or territory who was in actual consultation with any practioner whatever, of the state of Ohio."

It may be said generally, that the act imputed to the defendant below, and for which he was arrested, was in and of itself harmless. There certainly is nothing wrongful or harmful where one person engages for a compensation agreed upon, to rub with his hands the arm, lower limbs or other portions of the human body, for the purpose of relieving pain or bodily weakness or infirmity. It certairly involves no malice or moral turpitude, or disregard of the rights of others; the act per se seems entirely innocent and incapable of injuring anyone.

If therefore such an act is criminal and subject to fine and penalty, it must be by virtue of the express terms of some enactment of the general assembly.

It is not claimed that the accused was holding himself out as a physician or surgeon by adding any prefix or affix to his name; he claims to cure diseases according to a system known as Osteopathy, and that he is a graduate of some college or institution in the state of Missouri, in which that system is taught.

But no question is raised here as to the regularity or irregularity of that school of medicine. The only question presented to this court is, was the act charged to have been committed by the accused, in violation of the provisions of this act of the general assemlby to which I have called attention.

It is claimed by the state that this act has been violated; that although there was no addition to his name of . M. D. or M. B., and although he neither administered nor recommended any drug or medicine, that the act comes within the terms "or other agency" contained in Sec. 4403f, Ohio Laws, Vol. 92, p. 47, which is as follows:

"Any person shall be regarded as practicing medicine or surgery within the meaning of this act who shall append the letters M. D. or M. B. to his name, or for a fee prescribe, dircet or recommend for the use of any person, any drug or medicine or other agency for treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease: provided, however, that nothing in this act shall be construed to prohibit service in case of emergency, or the domestic administration of family remedies, and this act shall not apply to any commissioned medical officer of the United States Army, Navy or Marine hospital service in the discharge of his professional duties, nor to any legally, qualified dentist when engaged exclusively in the practice of dentistry, nor to any physician or surgeon from another state or territory, in which he resides, when in actual consultation with a legal prac-

tioner of this state, or to any physician or surgeon residing on the border of a neighboring state, and duly authorized under the laws thereof to practice medicine or surgery therein, whose practice extends into the limits of this state; providing that such practitioner shall not open an office or appoint a place to meet patients or receive calls within the limits of this state.''

·It is a well known rule of construction, that penal statutes, as against the prisoner, must be construed stricty, and in his favor liberally. This, however, does not prevent a construction as against him so strict, or in his favor so liberal, to defeat the obvious intention of the legislature.

But obviously, courts have no legislative power. The duty of the court is one of construction simply, and in construing a statute, regard must be had to the language employed, giving to every word, its full meaning; and if the language of the statute is vague, indefinite and uncertain, the context may be looked to to ascertain the meaning, but the intent of the general assembly in the enactment of this section, must be found in the ordinary meaning of the words.

What then do the words ''or other agency'' apply to? It is an axiomatic principle in the interpretation of statutes, that where particular words are followed by general ones, these general words are restricted in meaning, to objects of the like kind with those specified. This rule stands upon very eminent authority, and has been approved by the Supreme Court of this state in a number of cases.

If this sound maxim of construction is to be disregarded, and the words ''other agency'' are ot be applied, as claimed on the part of the state, then it follows that the acts or facts constituting a violation of this statute will depend upon the opinion and judgment of any Justice of the Peace, mayor or court before whom complaint is made. And the case presented in this record, and the difference of opinion in regard to it, is an apt illustration of the difficulty and uncertainty there would be in applying the words in their broad and comprehensive sense apart from the preceding words ''drug or medicine.'' Standing alone, these words may mean much or little. Taken in connection with the words drug or medicine, and applied in that sense according to the rule, there would be no practical difficulty in applying the law. The language so taken would be sufficiently definite and certain to indicate what was and what was not a crime.

We have no common law offenses in this country. Informed by the example of our English ancestors and the severity of their criminal code and procedure, not much over a century ago, when the maxim, ''Ignorantia juris non excusat'' was rigorously applied in numerous cases of conviction when the alleged offender was wholly ignorant of having committed any offense.

It became and is the policy of our law, to make all offenses specific and definite by express enactment, according to the maxim, ''Ita lex scripta est.''

If in construing this statute we are to use the words ''other agency'' in the broad sense claimed, then the inquiry may well be made, why were the words ''drug or medicines'' expressly mentioned? Surely drugs and medicines are agencies in the healing of diseases, and require no special mention; if therefore the words drug and medicine do not qualify and limit the general words, then we might eliminate the particular words so that the section would read as follows: ''Any person shall be regarded as practicing medicine or surgery within the meaning of this act, who shall append the letters M. D. or M. B. to his name, or for a fee prescribe, direct or recommend for the use of an person, any agency for the treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease, etc.''

I think no one will seriously contend but that the section in that shape would be null and void on account of indefiniteness and uncertainty.

The words ''other agency'', although comprehensive, must mean something in the same general sense that medicine or drugs is an agency, otherwise we would be groping about without chart or guide to ascertain what the law in fact prohibited.

The law is a useful one, and should receive a fair interpretation, and to do this, regard should be had to the subject matter, the abuse to be corrected, etc. The law in relation to druggists and pharmacists is very strict on account of the often dangerous character of such agencies, the business requires registration. There are strong reasons for requiring a certificate from one engaged in the practice of medicine administering drugs, medicines, etc.

Numbers of men are traveling about the country advertising themselves as doctors and pretending to heal all manner of diseases. They affix M. D. or M. B. to their names, and in numerous 'instances they are imposters, possessing neither skill nor conscience. They employ the knife, prescribe drugs and swindle their credulous patients. It was this empiricism that the law was aimed at, and there is no trouble in reaching all such cases.

There is no question here as to the theory and practice of Osteopathy, or as to the teachings of the American School of Osteopathy at Kirskville, Mo. The record presents the simple question, are the acts imputed to the plaintiff in error within the prohibition of this statute. In other words, is the act of kneading and rubbing the body with the naked hands, for a compensation, and for the treatment and cure of bodily disorders, a criminal act in this state

In the case of Geo. W. Simth v. Thomas Lane, 24 Hun Rep. 672, a very similar state of facts was presented, and three judges of the Supreme Court held that chapter 436 of the act of 1874, N. Y., declaring it to be a misdemeanor for any person to practice medicine cr surgery who is not

authorized to do so by a license from some chartered school, did not apply to one who undertakes to cure disease by manipulating the patient's body by rubbing, etc.

Rubbing, kneading and pressing the body for bodily ailments is not a new thing, nor in itself a harmful thing. The Roman patricians employed trained slaves for this very service, and the practice was in common use.

The massage treatment in common use now, consists chiefly in the process of rubbing with the hands,—manipulating the body for the cure of disease. The common resort to the Turkish bath is not so much on account of the luxury of the bath, as to obtain relief from weakness of body and mind, and the principal process in the Turkish bath consists in placing the body on a table, and active rubbing and manipulations by experts employed for the purpose.

I know a number of men who regularly employ a trained nurse or an expert to rub their bodies at stated periods, and they claim to have received great benefit from the treatment so applied.

Now, if the words "other agency" in this section are to include the act of Mr. Eastman as stated in the record, then it would be exceedingly difficult to draw the line so as not to include the cases above referred to.

If it was the intention of the general assembly to prohibit the practice in this state, of Osteopathy, clairvoyance, mind healing, faith cure, hypnotism, massage and christian science, it should have been specifically mentioned, and not left to mere inference from the general words "other agency."

I observe that one branch of the general assembly of the state of Iowa, has recently passed a bill prohibiting the practice of all these things in that state, but this clearly belongs to the legislative and not the judicial branch of this government.

My conclusion is, that the particular acts set forth and described in the record, do not constitute a violation of this statute, and that the judgment of the court below was erroneous, and judgment of reversal is accordingly entered.

Messrs. Oviatt, Allen & Cobbs, Attorneys for Plaintiff in Error.

Messrs R. M. Wannamaker, Pros. Att'y. and W. H. Love, Atty's for Defendant in Error.